386 P.2d 363

**Duane McKENZIE, Plaintiff-Respondent,**

**v.**

**Lynn S. PORTER, Defendant-Appellant.**

**No. 9335.**

Supreme Court of Idaho.

Oct. 25, 1963.

Black & Black, Pocatello, for appellant.

B. A. McDevitt, of McDevitt & McDevitt, Pocatello, for respondent.

TAYLOR, Justice.

This action, though actually one in accounting, was pleaded and tried as at law. Plaintiff (respondent) Duane McKenzie and defendant (appellant) Lynn S. Porter were friends and had been joint venturers on several construction jobs. This litigation involves an accounting of three such ventures, known as the "Forest job", the "Downey job" and the "Thiokol job." The agreements between the parties involved in these ventures were oral. The contracts for the construction involved in the first two mentioned jobs were made by plaintiff and that for the Thiokol job was made by the defendant. After completion of the three jobs the plaintiff brought this action to recover a claimed balance of $5976.61, and the sum of $808.75 upon a claim assigned to the plaintiff by one Glenn Call.

Sometime after the action was commenced the plaintiff submitted his records to one C. L. Swenson who was experienced in bookkeeping and accounting. From such records Swenson prepared statements of account covering each of the three projects. From these statements it appeared that defendant was indebted to plaintiff in the sum of $2615.67, and to assignor Glenn Call in the sum of $810.33. The allegations and prayer of plaintiff's complaint were amended so as to seek recovery of the amounts stated upon the accounts prepared by Swenson. By his answer the defendant denied there was any balance owing by him to either the plaintiff or the assignor Call. On trial the jury returned its verdict in favor of the plaintiff for $2026 on his own claim, and $600 on the assigned claim of Call, and judgment was entered accordingly.

Defendant appealed from the judgment and from the order denying his motion for a new trial.

Defendant's assignments of error all urge the insufficiency of the evidence to support the verdict and judgment.

The Thiokol job was the last of the three undertakings. The defendant bid for and obtained a contract for the moving of seven buildings, belonging to the Thiokol Corporation, from their location in Little Valley, Utah, to the site of the corporation's plant near Tremonton, Utah; there to place the buildings upon new foundations, to make needed repairs to roofs and floors, to reinstall plumbing and to place "skirting" around the base of the buildings to close the opening between the sill on top of concrete foundation piers and the ground. Defendant engaged plaintiff and Glenn Call to install the foundation piers and to do the needed carpenter work. This agreement was in effect a subcontract, except that it was agreed between the three parties that each would share equally in any profits realized from the performance of the subcontract. McKenzie and Call agreed to do the work assigned to them for $11,166.

At the time of the negotiations there appeared to be some uncertainty as to whether defendant's contract with Thiokol required defendant to install the skirting. Defendant proposed to Thiokol that he be paid an additional $1200 for the skirting. He was advised by an officer of the corporation that the officer would do what he could to secure an additional allowance of $600 for that purpose. Plaintiff and Call testified that defendant thereupon directed them to proceed, upon the assumption that the $600 would be allowed for the skirting. In his accounting McKenzie added the $600 to the amount to be allowed for the work undertaken by himself and Call. The defendant, to the contrary, testified that he did not agree to the addition of the $600 to the subcontract, in effect saying that such addition depended upon the allowance being made by Thiokol, and that he was later advised by the corporation that his original contract required the skirting and that no additional allowance would be made. Later the corporation requested that one of the buildings be placed upon a higher foundation and an additional $3200 was allowed for that purpose. This amount was added to the subcontract, and that item is not in dispute.

The cost of the plumbing on the Thiokol job was $1870.81. Plaintiff and Call testified that the subcontract did not include the plumbing; that defendant told them they would have nothing to do with the plumbing; that he and Tom Rowley, then an employee of the defendant, would install the plumbing, except that defendant might ask plaintiff and Call to assist in placing some of the fixtures; that defendant never asked them for any assistance in that regard, and they did none of the plumbing. Rowley, who was present when these conversations took place, by his testi-

mony supported McKenzie and Call. Defendant, to the contrary, testified that he agreed to do the plumbing in one building (which could be moved with the plumbing intact); that the plumbing in the other buildings was to be done by McKenzie and Call as a part of their subcontract.

Call testified that his claim against the defendant for $810.33 was made up of his one-third share of the $600 allowance for skirting, and of the 1800-odd dollars that defendant held back for the plumbing.

Plaintiff McKenzie's claim in part arises from the other jobs. The Forest job contract was for the construction of a building for the Forest Service for a total consideration of $12,179.30. The joint venturers on that job, in addition to the plaintiff and the defendant, included Clyde Porter and Gary McKenzie. The job had not been completed when the Thiokol job was undertaken. Certain materialmen and suppliers on the Forest job were pressing for payment and threatening action. At the same time it was necessary that the current payroll on the Thiokol job be met. Accordingly, on or about February 8, 1960, it was agreed between the parties that the defendant would pay those claims against the Forest job, in the total amount of $2803.93, and that plaintiff, McKenzie, would use money he was holding for that purpose to pay accruing labor bills on the Thiokol job. At the same time and as part of this arrangement, plaintiff agreed to pay all bills against the Forest job and the Downey job and give the defendant $600 in cash. On the accounting the Forest job showed a loss of $2268.49, or $567.12 loss to each of the four joint venturers. The accountant deducted defendant's share of the loss from the amount he had paid suppliers on that job and showed a balance due to defendant from the plaintiff of $2236.80.

Plaintiff and defendant were the only parties to the Downey job. That job provided a profit of $1550.03 and defendant expended $160 thereon. The rest of the expenses were paid by plaintiff. The accountant added the $160 to defendant's share of the profit and showed plaintiff owing to defendant $935.02.

The accountant's recapitulation of the Thiokol job, including the $600 added to the subcontract for skirting, and excluding the cost of the plumbing, showed a gain of $3832.45, or a profit to each of the three venturers of $1277.48. Of the expenses on the Thiokol job plaintiff had paid $4510.01, which, added to his share of the profit, resulted in a balance owing by defendant to plaintiff of $5787.49. The defendant had paid to Call $467.15, leaving a balance due to Call of $810.33. Offsetting the amounts owing by the plaintiff to the defendant on the Forest job and the Downey job, left a balance owing by defendant to plaintiff of $2615.67, plus $810.33 on the assigned claim of Call.

Assuming the jury applied the agreement of February 8, 1960, to the Forest job, defendant was not chargeable with his share of the loss on that venture ($567.12) because that agreement required plaintiff to pay all bills against that job. Such application would require a deduction of $567.12 from the amount the accountant found owing by defendant to plaintiff. However, that part of the agreement of February 8, 1960, requiring plaintiff to pay defendant $600 in cash was more than offset by the credit to the defendant of $775.02 as his share of the gain on the Downey job. The net result would be a total downward revision of defendant's obligation to the plaintiff of $392.11.

There was a sharp dispute between the parties concerning a bill presented by the Cove Concrete Co. for mixed cement and gravel supplied to the Downey job. The plaintiff and his witnesses testified that more material was charged for than was delivered to the job, and that twelve to eighteen yards of the mixed cement delivered by that company, @ $22 per yard, was rejected by the Forest Service engineer, and dumped. The total bill was $512. Defendant testified that all material charged for was delivered and used on the job, and that he had paid the bill. Thus, there was evidence upon which the jury could allow the bill, or reject it in large part.

The schedules and accounts prepared by the accountant, who testified as a witness for both parties, were supported by vouchers, statements, cancelled checks and payrolls, as well as by the testimony of the plaintiff and his witnesses. The amounts allowed by the jury on the claims of plaintiff and Call were substantially less than the evidence would warrant and, being supported by substantial, competent evidence, the judgment thereon is conclusive on appeal. I.C. § 13–219, and footnote.

Judgment affirmed.

Costs to respondent.

KNUDSON, C. J., and McQUADE, McFADDEN and SMITH, JJ., concur.